UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSLYN M. JOHNSON, § | |
| § | |
| Plaintiff, § | |
| vs. § | CIVIL ACTION NO. H-10-cv-366 |
| § | |
| CITY OF HOUSTON, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Pending before the Court are the defendant's, City of Houston (the "City"), motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) (Docket Entry No. 2), the plaintiff's, Joslyn M. Johnson (the "plaintiff"), response in opposition to the City's motion to dismiss (Docket Entry No. 10) and the City's supplement to its motion to dismiss (Docket Entry No. 3). After carefully reviewing the pleadings, the motion to dismiss, the response and the applicable law, the Court is of the opinion that the City's motion to dismiss should be GRANTED.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff is a Sergeant in the Houston Police Department ("HPD"). On September 21, 2006, former HPD Officer, Rodney Johnson ("Officer Johnson"), the plaintiff's husband, stopped Juan Leonardo-Quintero-Perez ("Quintero") for speeding. During the traffic stop, Officer Johnson, while on patrol duty by himself, searched Quintero, eliciting a weapon. After removing his weapon, Officer Johnson then handcuffed Quintero and placed him in the back seat of his police cruiser. Some time thereafter, Quintero fatally shot Officer Johnson in the back of the head. Quintero was subsequently convicted and is now serving a life sentence for capital murder of a police officer.

### A. The Plaintiff's Prior Action - *Johnson I*

On September 22, 2008, the plaintiff, in both her individual capacity and as the Executrix of the Estate of Officer Johnson, brought suit against the City of Houston (the "City") in the 125th Judicial District Court of Harris County, Texas, identified as Cause No. 2008-53919 ("*Johnson I*"), alleging a negligence claim, Texas Tort Claims Act ("TTCA") liability, respondeat superior liability and a claim for gross neglect, malice and exemplary damages. (*See* Case No. 4:08-cv-03770; Docket Entry No.1, Ex. A-1. On or about December 9, 2008, the plaintiff, in her Second Amended Original Petition, alleged for the first time a civil rights claim pursuant to 42 U.S.C. §1983, claiming that the City's policies, practices, customs and/or procedures violated Officer Johnson's constitutional rights. On December 30, 2008, the City removed the action to federal court asserting federal question jurisdiction. (*See* Case No. 4:08-cv-03770; Docket Entry No.1.) On February 23, 2009, the plaintiff sought leave to file her Fourth Amended Complaint. (*Id.*; Docket Entry No. 12.). On February 25, 2009, the Honorable Judge Sim Lake entered an order granting the plaintiff's motion for leave and referring the case to U.S. Magistrate Judge Nancy Johnson. (*Id.*; Docket Entry No. 12.)

In her Fourth Amended Complaint, the plaintiff alleged both state and federal claims. (*Id.*; Docket Entry No. 10.) As to her federal claims, she alleged a substantive due process claim pursuant to 42 U.S.C. §1983, claiming that HPD's policies deprived Officer Johnson of his life and liberty under the 14th Amendment of the U.S. Constitution. (*Id.*) Specifically, she noted that at the time Quintero was stopped by Officer Johnson, he had a federal arrest warrant pending and had been in the United States illegally. (*Id.*). Nevertheless, she contends that HPD's policies prohibited officers from inquiring into a detainee's immigration status and further prohibited them from contacting the Department of Homeland Security and/or other federal databases to

determine whether a detainee had a pending federal arrest warrant. (*Id.*). With respect to her state law claims, she alleged that HPD's policies led to Officer Johnson's death. (*Id.*). As to her state law claims, she alleged claims of negligence and gross negligence against the City, alleging it breached the duty of care that it owed to Officer Johnson and other HPD officers. (*Id.*). She further sought a declaration that portions of the Texas Labor Code were unconstitutional. (*Id.*).

On March 16, 2009, the City moved to dismiss the plaintiff's Fourth Amended Complaint on several grounds. (*Id.*; Docket Entry No. 16.). On April 6, 2009, the plaintiff filed a response in opposition to the City's motion to dismiss. (*Id.*; Docket Entry No. 21.). On September 8, 2009, Judge Johnson entered a Memorandum and Recommendation recommending that the district court grant the City's motion to dismiss with regard to the plaintiff's § 1983 substantive due process claim and state law claim for gross negligence. (*Id.*; Docket Entry No. 23.). Regarding the plaintiff's negligence claim, however, Judge Johnson recommended that the district court decline to exercise supplemental jurisdiction and remand it to state court. (*Id.*) On September 30, 2009, Judge Lake entered an order adopting Judge Johnson's Memorandum and Recommendation. (*Id.*; Docket Entry No. 24.).

**B.    The Current Action**

On September 21, 2009, the plaintiff commenced the instant action against the City, HPD and former Chief of Police Harold Hurtt, in his official capacity ("Chief Hurtt") (the "City", "HPD" and "Chief Hurtt" jointly, the "defendants"), in the 151st Judicial District Court of Harris County, Texas, identified as Cause No. 2009-60471. In the current action, she challenges certain HPD policies that restrict her ability as a police officer to contact U.S. Immigration and Customs Enforcement ("ICE"). (*See* Case No: 4:10-cv-366; Docket Entry No. 1). Specifically, she alleges that under current HPD policy, officers may check the "wanted" status of anyone legally

detained and are required to check the "wanted" status of anyone ticketed, arrested, or jailed. (*Id.*; Docket Entry No. 1, Ex.1.). She states that these checks are performed by running a person's name through various computer databases such as the National Crime Information Center ("NCIC") database; however, only if an officer receives an "NCIC Immigration Hit" indicating that a person is the subject of an ICE-issued outstanding criminal warrant, an administrative warrant of removal or a notice of detainer is the officer allowed to contact ICE directly to confirm the information that the NCIC "hit" may contain. (*Id.*; Docket Entry No. 1, Ex.1.). Otherwise, she asserts, officers are not allowed to independently contact ICE. (*Id.*; Docket Entry No. 1, Ex.1.).

In her Original Petition, she seeks a writ of mandamus against Chief Hurtt directing him to comply with his clear, non-discretionary legal duty under 8 U.S.C. §§ 1373 and 1644 to refrain from prohibiting or restricting her from contacting ICE regarding the immigration status of persons she encounters as a police officer. She also alleges that the defendants are in violation of § 1983 by harming her ability to fulfill her oath and otherwise carry out her duties as a law enforcement officer by restricting her freedom of expression. She further alleges that the defendants' conduct deprives her of her rights, privileges and immunities, including her right to freedom of expression as guaranteed by Article I, Section 8 of the Texas Constitution. Lastly, she seeks a declaration stating that the defendants' policies regarding ICE are unlawful and void; and an injunction enjoining the defendants from enforcing or continuing their policies regarding ICE.

On February 8, 2010, the City timely removed the state court action to this Court, asserting that this Court has original jurisdiction over the plaintiff's § 1983 claim. The City now moves to dismiss this action for failure to state a claim.

### III.  CONTENTIONS OF THE PARTIES

#### A.  The City's Contentions

Initially, the City contends that the plaintiff's claims against HPD must be dismissed because HPD is a non-jural entity that lacks the capacity to be sued. Similarly, it contends that the plaintiff's claims against former Chief Hurtt must be dismissed because a suit against a governmental official in his official capacity is in reality a suit against the governmental entity of which that official is an agent, and hence, the inclusion of Chief Hurtt as a party is redundant. The City also argues that the doctrine of *res judicata*, or claim preclusion, bars the plaintiff's claims in the instant action because she had the opportunity to raise these same claims in *Johnson I* but failed to do so. Next, it asserts that the plaintiff's First Amendment claim is not viable, since the restrictions on her speech relate to her job duties. It further states that 8 U.S.C. §§ 1373 and 1644 do not create private causes of action for litigants, such as the plaintiff. Likewise, it avers that the plaintiff does not have a private cause of action for the violation of her rights under the Texas Constitution. As a final ground for dismissal, it contends that the plaintiff's claims should be dismissed because she effected service of process on it after the statute of limitations had run on her claim.

#### B.  The Plaintiff's Contentions

The plaintiff argues that the City's motion to dismiss must be denied for several reasons. First, the plaintiff contends that her claims against HPD should not be dismissed because HPD has been a party to lawsuits in the past, and hence, has the capacity to be sued. Second, she contends that the claims against Chief Hurtt should not be dismissed because she seeks mandamus relief, and such relief must be sought against a public official not a governmental entity. Third, she argues that her claims are not barred by the doctrine of *res judicata* because

each of her lawsuits involved different causes of action. Fourth, she asserts that she has stated a viable cause of action under the First Amendment in accordance with applicable law. Fifth, she argues that she has a private right of action under both §§ 1373 and 1644. She further avers that she has a private right of action for her alleged violations under the Texas Constitution because her claim is for equitable, rather than monetary relief. Finally, she argues that the City's due diligence argument lacks merit.

## IV.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Id.* at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In this regard, its review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Court may also, however, "take judicial notice of documents in the public record . . . , and may consider such documents in determining a motion to dismiss." *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 640 n. 2 (5th Cir. 2005) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 - 18 (5th Cir. 1996). "Such documents should be considered only for the purpose of determining what statements [they] contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018 (internal

citation omitted). "If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, No. 08-40516, 2008 WL 5352000, \*3 (5th Cir. Dec. 23, 2008) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

## V. ANALYSIS AND DISCUSSION

### A. HPD's Legal Capacity to Be Sued

In its motion to dismiss, the City first moves to dismiss HPD as a party to this case. It contends that HPD, as a department within the City of Houston, lacks any legal existence, and hence, cannot sue or be sued. The plaintiff, in contrast, argues that because HPD has been a party to lawsuits in the past, it necessarily has the capacity to sue or be sued.

In her Original Petition, the plaintiff names the "Houston Police Department" as a defendant in this case. However, in accordance with Rule 17(b) of the Federal Rules of Civil Procedure, in order to be sued, a "part[y] must have the capacity to sue or be sued." *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S. D. Tex. 1993); *see also* Fed. R. Civ. P. 17(b). Whether an entity, such as HPD, has the capacity "to sue or to be sued is 'determined by the law of the state in which the district court is held.'" *Paredes v. City of Odessa*, 128 F. Supp.2d 1009, 1013 (W.D. Tex. 2000) (citing FED. RULE CIV. P. 17(b); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)). "In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'" *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (citing *Darby*, 939 F.2d at 313) (internal citations omitted). The Fifth Circuit has further explained that

"[i]n order for a plaintiff to sue a city department, [that department] must 'enjoy a separate legal existence.'" *Darby*, 939 F.2d at 313 (internal citations omitted).

Article II, Section 16, of the City's Charter indicates that HPD is merely an arm of the City. The plaintiff has presented no facts establishing that HPD enjoys a separate legal existence apart from the City or that the City has granted it with jural authority. Thus, the Court determines that HPD is not a legal entity under Rule 17(b) and therefore, lacks the legal existence and capacity to be sued. Accordingly, the plaintiff's claims against it must be dismissed.

### B. The Plaintiff's Claims Against Chief Hurtt

The City also moves to dismiss the plaintiff's claims against former Chief Hurtt, in his official capacity, on grounds that a suit against Chief Hurtt, in his official capacity, is in reality a suit against the City. The plaintiff, on the other hand, contends that her claims against Chief Hurtt should not be dismissed as redundant because she seeks mandamus relief against him and such relief is typically available against a public official rather than a municipality such as the City. Specifically, in her Original Petition, she alleges that Chief Hurtt has failed and refused to comply with his clear, non-discretionary legal duty under 8 U.S.C. §§ 1373 and 1644. (Docket Entry No. 1, Ex. 1 at 12.). As such, she requests that this Court do the following:

> [issue] a writ of mandamus against [Chief] Hurtt directing him to comply with his non-discretionary, legal duty to refrain from prohibiting or in any way restricting [her] from contacting ICE to obtain or provide information about the immigration status of persons she lawfully encounters in performing her duties and responsibilities as a law enforcement officer.

(*Id.*, Ex. 1 at 15.). This Court, however, does not have the authority to grant the mandamus relief the plaintiff seeks in this instance.

While it is true that, pursuant to § 1361, this Court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff[,]" Chief Hurtt is not a United States officer, employee or agency and thus, is not subject to the mandamus authority of this Court. *See* 28 U.S.C. § 1361. Further, federal courts lack the general power "to direct [or compel] state officials in the performance of their duties and functions." *Noble v. Cain*, No. 04-30099, 2005 WL 361818, at *1, (5th Cir. Feb. 16, 2005) (citing *Moye v. Clerk*, *DeKalb Cnty. Superior Court*, 474 F.2d 1275, 1275 - 76 (5th Cir. 1973); 28 U.S.C. § 1361). Therefore, the plaintiff's claim for mandamus relief against Chief Hurtt will be dismissed as this Court lacks jurisdiction to issue the writ she seeks.

In addition to her claim for mandamus relief against Chief Hurtt, the plaintiff seeks to hold him liable, in his official capacity, for violations of § 1983 and the Texas Constitution. As previously set forth above, the City argues that such claims against Chief Hurtt, in his official capacity, should be dismissed because they are, in actuality, just another way of pleading against the City. This Court agrees.

The United States Supreme Court has held that suits brought pursuant to §1983 against state officials in their official capacities should be treated as suits against the states by which they are employed. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991). Thus, an "official-capacity suit[] 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs*, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed.2d 611 (1978)). Texas state courts have adopted the same rationale with regard to common law claims alleged against both a

city and its chief of police, in his official capacity. *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.-Houston [1 Dist.], 1995, no writ) (citing *Winograd v. Clear Lake City Water Auth.,* 811 S.W.2d 147, 162 (Tex. App.-Houston [1st Dist.] 1991, writ denied) (reasoning that "[s]uits against a governmental official in his official capacity are just another way of pleading a suit against a governmental entity of which the official is an agent"). Accordingly, in light of well-established law, the plaintiff's claims for violations of §1983 and the Texas Constitution against Chief Hurtt, in his official capacity, should be dismissed since the City is also named as a defendant with regard to these claims.

### C. Whether the *Res Judicata* Doctrine Bars the Plaintiff's Claims

The City further asserts that the plaintiff's claims are barred by the doctrine of *res judicata* or claim preclusion. The plaintiff, in opposition, argues that her claims are not barred by the *res judicata* doctrine because: there is no identity of parties; the judgment in *Johnson I* did not constitute a final judgment on the merits; her current claims arise out of a different transaction or occurrence than her claims previously asserted in *Johnson I*; and she could not have raised her current claims in *Johnson I*.

"The doctrine of *res judicata* or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312 - 13 (5th Cir. 2004) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L. Ed.2d 308 (1980)). Its purpose is to ensure the finality of judgments and to conserve judicial resources by preventing litigants from bringing multiple lawsuits on the same cause of action. *Pena v. United States*, 883 F. Supp. 154, 157 (S.D. Tex. 1994) (citing *Medina v. I.N.S.*, 993 F.2d 499, 503 (5th Cir. 1993)). In order to demonstrate that a claim is barred by the doctrine of *res judicata*, the Fifth Circuit has explained that the following elements must be established:

      (1) the parties in both the prior suit and current suit must be identical;
      (2) a court of competent jurisdiction must have rendered the prior judgment;
      (3) the prior judgment must have been final and on the merits; and
      (4) the plaintiff must raise the same cause of action in both suits.

*Davis*, 383 F.3d at 313 (citing *Howe v. Vaughan*, 913 F.2d 1138, 1143 - 44 (5th Cir. 1990)).

With regard to the fourth element, this Circuit has adopted "the transactional test of the Restatement (Second) of Judgments, § 24." *Petro-Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 396 (5th Cir. 2004) (citing *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 - 71 (5th Cir. 1984)). "Under [the transactional] test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Petro-Hunt*, 365 F.3d at 395 - 96 (quoting Restatement (Second) of Judgments § 24(1) (1982)). Therefore, the critical inquiry relating to the fourth element becomes "whether the two actions under consideration are based on the '*same nucleus of operative facts*.'" *Id.* at 396 (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (internal citations omitted) (emphasis in original)). Each of the four elements will be analyzed in turn.

      **1.**     **Whether the Parties Are Identical or in Privity**

The first and most basic requirement of the *res judicata doctrine* is that the parties in the former and subsequent action must be identical. *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). To satisfy this element, however, a strict identity of parties is not needed; this requirement may be satisfied when the parties to both actions are in privity with one another. *Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). For *res judicata* purposes, privity between parties exists in three narrowly-defined situations: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately

represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). The Fifth Circuit has further explained that the identity of parties element "is not defeated by a change in the capacity in which an individual sues, nor is it defeated by the inclusion of additional parties to the second suit." *United States ex. rel. Laird v. Lockheed Martin Eng'g & Sci. Servs., Co.*, 336 F.3d 346, 357 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 472, 127 S. Ct. 1397, 167 L.Ed.2d 190 (2007) (internal citations omitted).

Under a strict application of these principles, the "identity of parties" element is clearly satisfied. Though it is true that neither Chief Hurtt, in his official capacity, nor HPD were named as defendants in *Johnson I*, their inclusion as parties in this case will not operate to defeat the applicability of the *res judicata* doctrine since they are in privity with the City, a party defendant in both cases. The "identity of parties" requirement is also not defeated by the change in the capacity in which the plaintiff now sues; consequently, the fact that the plaintiff in *Johnson I* was "Joslyn M. Johnson, Individually and as Executrix of the Estate of Rodney Johnson, Deceased" and now in this case is "Joslyn M. Johnson" is of no moment. For even as "Joslyn M. Johnson, Individually and as Executrix of the Estate of Rodney Johnson, Deceased," the current plaintiff controlled the prior litigation and was in privity with a party in it. Because it is clear under the applicable standard that each party in this case was either an actual party or in privity with a party in *Johnson I*, the "identity of parties" element is satisfied.

### 2. Whether a Court of Competent Jurisdiction Rendered the Prior Judgment

Second, neither party disputes that the judgment in *Johnson I* was rendered by a court of competent jurisdiction. Thus, the second element of the *res judicata* test has been satisfied.

### 3. Whether the Prior Judgment Was Final and on the Merits

The third element that "the prior judgment must have been final and on the merits" has also been satisfied. The plaintiff, however, disputes this contention, asserting that while the Court dismissed her federal claims in *Johnson I*, it remanded her negligence action to state court. Because the negligence action is still pending in state court, she surmises that there has been no "final judgment on the merits" with respect to *Johnson I* for *res judicata* purposes. The Court finds the plaintiff's argument in this regard unavailing for two reasons.

First, in *Johnson I*, this Court dismissed the plaintiff's § 1983 substantive due process claim, gross negligence claim and her constitutional challenges to the TTCA for failure to state a claim. The Supreme Court has reasoned that a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim constitutes a "judgment on the merits" for purposes of the res judicata doctrine. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see also Hall v. Hodgkins*, No. 08-40516, 2008 WL 5352000, *3 (5th Cir. Dec. 23, 2008); *Green v. La. Dep't of Public Safety and Corrs*, No. 2:06cv1018, 2006 WL 3772000, *2 -*3 (W.D. La. Dec. 20, 2006); *Bosier v. Gila Corp.*, No. 03-09-00118-CV, 2009 WL 2902695 (Tex. App.- Austin 2009, no pet.). Second, the Court's subsequent order in *Johnson I* remanding the sole remaining negligence claim to state court was merely a discretionary refusal to exercise supplemental jurisdiction. Thus, the Court's order of dismissal, dismissing the plaintiff's § 1983 substantive due process claim, gross negligence claim and her constitutional challenges to the TTCA, was separable from the Court's subsequent order of remand and is final for *res judicata* purposes.

### 4. Whether the Plaintiff Has Raised the Same Cause of Action

Lastly, the fourth element that "the plaintiff must raise the same cause of action in both suits' is also satisfied. To determine whether a given grouping of facts constitutes a single transaction, a court must examine pragmatic factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Petro-Hunt*, 365 F.3d at 396 (internal quotations and citation omitted). In order to determine whether two actions are based on the "same nucleus of operative facts," a court "look[s] to the factual predicate of the claims asserted, not the legal theories upon which a plaintiff relies." *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992) (internal citation omitted).

In arguing that the fourth element of the *res judicata* test has not been satisfied, the plaintiff contends that this suit does not involve the same claims as her prior lawsuit because, here, she merely asserts a "straightforward legal challenge to HPD's policies, practices and procedures" not the "substantive due process/state-created danger claim" as alleged by the Estate in *Johnson I*. (Docket Entry No. 10 at 10.). Additionally, she argues that she could not have advanced the challenges she has alleged in this case in *Johnson I* because HPD's policies relating to when officers may ascertain a suspect's immigration status have changed since *Johnson I*; and consequently, the two suits cannot possibly arise out of the same nucleus of operative facts. The Court rejects these arguments as unpersuasive.

Under the transactional test, it is evident that the plaintiff's claims in *Johnson I* and in the current action are based on the same nucleus of operative facts. Specifically, the factual predicate in both suits relates to the plaintiff's complaints of what she deems to be flawed policies and/or practices of HPD that preclude her and other officers from inquiring into a

detained person's immigration status. In both lawsuits, she describes a routine traffic stop and arrest of an illegal immigrant made by her husband, Officer Johnson, which led to his death. She alleges that at the time of her husband's death, the City and HPD maintained a policy, practice and/or custom of precluding officers from inquiring into a detained person's immigration status and prohibiting them from communicating with federal agencies and/or applicable databases to determine the detainee's criminal status, if any. In both lawsuits, she further alleges that these policies and/or practices led to the untimely death of her husband at the illegal immigrant's hands. Though she now contends that since her husband's death HPD has liberalized its policies by authorizing officers to use the NCIC database to check the "wanted" status of anyone legally detained, regardless of the alleged liberalization in HPD's policies, the factual predicate for her claims remains the same.

The fact that the legal theories upon which she sues are different is also irrelevant. *See Eubanks*, 977 F.2d at 171 (noting that courts are not to look at the legal theories on which a plaintiff relies in assessing whether her claims arise out of the same nucleus of operative facts). Regardless of whether the plaintiff now complains of HPD's policies restricting her and other officers from communicating with ICE concerning a detainee's immigrant status, her inability to perform her job duties as a result of these policies and/or practices or HPD's policies and/or practices of prohibiting officers from communicating with the Department of Homeland Security and/or other federal databases regarding a detainee's criminal status---all claims are based on the same nucleus of operative facts in both cases. Indeed, in *Johnson I* as well as in this case, the plaintiff specifically complained of HPD's restrictions on an officer's ability to obtain information about a detained person's immigration status and/or criminal history. Further, her claims in *Johnson I* as well as in the current action form a convenient trial unit. Judicial dockets,

especially at the federal level, are heavily overloaded and as such, it is sensible to require that all claims that may be conveniently tried together be brought in one suit. In *Johnson I*, the plaintiff brought suit for a §1983 violation of her substantive due process rights under the Fourteenth Amendment on behalf of her deceased husband's estate; she could have easily brought her claims alleged in the current action in that suit as well since she initiated that action in both her individual and executive capacities and ultimately controlled the litigation.

The Fifth Circuit has noted that "[t]he rule is that res judicata bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated." *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (internal quotation marks and citations omitted); *see also Eubanks*, 977 F.2d at 173. After comparing the plaintiff's Original Petition in the current action to her Fourth Amended Complaint that was filed in *Johnson I* and judicially noticed, the Court finds that the plaintiff's claims are barred by *res judicata*.

## VI. CONCLUSION

Based on the foregoing discussion, the Court hereby GRANTS the City's motion to dismiss. Because the Court grants the City's motion to dismiss on *res judicata* grounds, it need not address the City's additional grounds for dismissal as they are rendered moot.

IT IS SO **ORDERED.**

SIGNED at Houston, Texas this 30th day of September, 2010.

_____
Kenneth M. Hoyt
United States District Judge